Jonathan HOLMES, et al., Plaintiffs,

v.

The DISTRICT OF COLUMBIA, et al., Defendants.

Civ. A. No. 86–762.

United States District Court,
District of Columbia.

Feb. 26, 1988.

Matthew B. Bogin, Bogin and Eig, Washington, D.C., for plaintiffs.

Barbara J. Mann, Asst. Corp. Counsel, Washington, D.C., for defendants.

## MEMORANDUM OPINION AND ORDER

SPORKIN, District Judge.

This case is now before me on defendants' motion for "Relief From the Court Order Entering Judgment in Favor of Plaintiffs" and plaintiffs' "Request for Reasonable Attorneys' Fees." After careful consideration of these motions I have decided to deny defendants' motion and to grant the motion made by plaintiffs.

■ These motions have come before me after the completion of a one day bench trial where I entered judgment on behalf of plaintiffs. The heart of defendants' request for relief is that I failed to make a finding about the appropriateness of the Buchanan School as a placement for Mr. Holmes for the 1985–86 school year—and that it was therefore inappropriate for me to order the defendants to pay the costs of Jonathan Holmes' education at the Chelsea School for that school year. Defendants assert:

> This circumstance together with the absence of a finding in the judgment of the Court on the issue of the appropriateness of Buchanan for the school year 1985–86 is contrary to § 1415(e)(2) and *Rowley* ... "The ultimate question for a court under the Act is whether a proposed IEP is adequate and appropriate for a particular child at a given point in time." Moreover, because plaintiffs failed to demonstrate any alleged inappropriateness with regard to the 1985–86 IEP and defendants have demonstrated an ability to implement the IEP, plaintiffs are required to bear the financial cost of the minor plaintiff's private school placement.

Defendants' Brief at 4. Defendants make the corollary claim that "it is premature for the Court to decide on an appropriate placement for the 1987–88 school year." They also request relief from that judgment—and my order that they pay the cost of Jonathan Holmes' education at Chelsea for those two years. Defendants' Brief at 5. Defendants' two requests for relief amount to a request for me to vacate my Order in its entirety.

Defendants are wrong on both counts. I found that the Chelsea School was appropriate for the past two school years and that it is an appropriate placement for this school year. In fact, in rendering my Opinion from the Bench, I stated:

> I therefore find that the Buchanan School, under the circumstances in this case, would not be the appropriate school to send this student to at this time in his career. *It would be the most inappropriate thing to do.* The appropriate

place for this youngster is to permit him to finish the remaining seven months of his high school education in the environment that he has been accustomed to over the past three years. *I conclude as a matter of law that it would be inappropriate to transfer this youngster at this time and that the Buchanan School is not an appropriate place for him at this time.*

Whether or not that finding was understood by defendants to completely resolve this matter, I now emphasize that Chelsea is and has been the appropriate placement for Mr. Holmes. It is also my finding and conclusion that the Buchanan School was not and is not an appropriate placement for this youngster. It is not often that a court can be as positive in making a finding as I am in this case. My finding is based on testimony I heard firsthand about how well this handicapped youngster has adapted to the Chelsea School environment. I do not know how the Buchanan School, which is virtually in a start-up posture, could have come even close to meeting the needs of the plaintiff. For any court to have ordered this youngster to attend the Buchanan School for the 1985 school year, during the school's start-up period, would have been a reckless and wanton act. Such an act would have been particularly wrongheaded in light of plaintiff's complete adjustment to the environment of the Chelsea School program. Moreover, to now send the plaintiff to the Buchanan School to complete the last semester of his schooling would not only be inappropriate, but would also be insensitive and indefensible.

Accordingly, the District must pay for Mr. Holmes' schooling at Chelsea for *all* of the time he has attended and will attend that school. As I have already stated, at no time during this ongoing proceeding was Buchanan an appropriate placement for Mr. Holmes. A brief review of the procedural history of this case will make it clear that defendants have only themselves to blame for Mr. Holmes' placement in a private school and the concomitant imposition of the costs of that placement on the District of Columbia.

Because of defendants' initial failure to submit a timely IEP for Mr. Holmes when he was preparing to enter high school, as well as other procedural mistakes by defendants, the hearing examiner found that Mr. Holmes' parents were justified in placing Mr. Holmes in Chelsea. She found the defendants should pay for that placement from the date of Jonathan Holmes' enrollment until the date of her decision. She further found that Buchanan would be an appropriate placement for Jonathan Holmes *after* the date of her decision—which was rendered on March 6, 1986.

Plaintiffs appealed the hearing officer's ruling that Buchanan would be an appropriate placement after March 6, 1986 (or, in other words, that after March 6, 1986, either Mr. Holmes would have to enroll in Buchanan or his parents would have to absorb the cost of his attending Chelsea). During the pendency of that appeal, defendants were required by the EHA to pay the costs of Mr. Holmes' placement at Chelsea. 20 U.S.C. § 1415(e)(3) ("status quo provision").

Judge June Green, relying in part on the fact that the egregious procedural performance by the defendants was fundamentally responsible for Jonathan Holmes' initial placement at Chelsea, followed the "status quo provision" of the EHA on July 23, 1987, when she granted plaintiffs' Motion for Partial Summary Judgment. Her ruling resolved the question of who would pay for Jonathan Holmes' placement at Chelsea during the pendency of this litigation—it would be the District of Columbia. There is no question that she was correct—and I was at no time asked to consider, nor did I consider her judgment one that was subject to my review on October 29, 1987. Therefore, regardless of how I resolved the issue of where Jonathan Holmes was to be placed for the balance of this school year, defendants were responsible for paying for his placement at Chelsea from the date of his enrollment there until the date of my decision.

I heard this case on October 29, 1987. At that time, in light of the hearing examiner's determination and Judge Green's is-

suance of partial summary judgment, the *only* issue before me was whether Chelsea or Buchanan was the appropriate placement for Jonathan Holmes for the balance of this school year—his final year of high school. I am completely at a loss to understand why defendants contend that on the one hand, my decision on this issue is "premature," while on the other hand, contend that I never decided the appropriate placement for the 1985–86 school year (an issue already definitively resolved by Judge Green).

■ After reviewing their argument, it seems that defendants are arguing that a court cannot rule on the appropriateness of a placement unless there has been a full and independent administrative record already developed for that particular school year. Defendants assert:

> Clearly, neither the complaint nor the administrative record reflect any issues or challenges with regard to the school years subsequent to 1985–86. Thus, plaintiffs are the [sic] precluded from litigating the school years 1986–88. The judicial review required by § 1415(e)(2) is an appellate-like review which does not include original jurisdiction.

This argument is without merit. The administrative record is replete with claims by plaintiffs that Mr. Holmes will be harmed if he is transferred *at any time.* Even had plaintiffs failed to make a specific, formal claim for funding for the 1986–87 or 1987–88 school years, Mr. Holmes and others similarly situated cannot be required to initiate a new administrative process for each school year, when they are actually in the middle of an ongoing proceeding. Defendants' draconian view of the system would consign plaintiffs to multiple hearings and a never-ending series of conflicts, as well as extraordinarily expensive legal costs on behalf of their own client. I refuse to adopt this view of my authority to resolve once and for all an ongoing dispute. Judicial economy and simple notions of fairness require me to reject defendants' argument. Aside from the authority I have as a judge sitting in equity, the EHA provides me with authority to "grant such relief as

the court determines is appropriate." 20 U.S.C. § 1415(e)(2); *see also McKenzie v. Smith,* 771 F.2d 1527, 1535 (D.C.Cir.1985) (finding that § 1415(e)(2) confers broad discretion on the court).

Furthermore, I am at a loss to explain how defendants can make such an argument at this juncture after they sat through a day-long hearing where everyone in the courtroom was under the impression that we were striving to determine the appropriate placement for Mr. Holmes *for this school year* (1987–88). Fortunately, I need not explain it. So that there will be no loose ends or any further misunderstandings, I shall now make a full and complete determination to all issues raised by defendants.

In accord with the hearing examiner, I find Chelsea was the appropriate placement for Mr. Holmes until March 6, 1986.

In accord with Judge Green, I find that Chelsea was the appropriate placement for Mr. Holmes during the interim period between March 6, 1986 and my decision on November 2, 1987—and that the District of Columbia must bear the cost of this placement. In addition to Judge Green's reliance on the "status quo provision" and defendants' procedural wrongdoing, I add a separate ground to support Mr. Holmes' placement at Chelsea pending the outcome of this matter. Based on a careful review of the administrative record and the testimony I heard, it is clear that for the same reasons it would have been inappropriate to transfer Mr. Holmes from Chelsea to Buchanan on November 2, 1987, it would have been deeply problematic to have done so in mid–1986. Such a transfer would have been risky and would have carried with it great risks of disruption. Although the testimony I heard on October 29, 1987 focussed on the impact a transfer would have had on Jonathan Holmes at this time, I find that this young man would have been severely harmed had he been transferred a year ago. As I emphasized at the hearing, I credit the testimony of Mr. Holmes' psychologist, Mr. Turner and Chelsea's Assistant Head Master, Mr. O'Connor—both of

whom explained the harmful effects a transfer would have on Mr. Holmes.

As I stated at the trial, I further find that the Chelsea School is the appropriate school for Jonathan Holmes to attend for the current school year and it is my conclusion "that defendants shall pay the tuition and other costs as required by the Education for All Handicapped Children Act for Jonathan Holmes to attend the Chelsea School until his graduation." *See Jonathan Holmes, et al. v. the District of Columbia, et al.,* C.A. 87–762 (Order, Nov. 2, 1987).

Lest there be any residual doubt, I further find that not only is Chelsea the appropriate school for Jonathan Holmes to attend both now and in the past—but also, that Buchanan would be an inappropriate placement now and would have been an inappropriate placement at all relevant times in the past.

■ The second issue before me is plaintiffs' request for attorneys' fees. I have recently had the opportunity to address this issue in a case that arose involving these same counsel. *See generally Lani Moore v. District of Columbia,* 674 F.Supp. 901 (1987). Any determination of reasonable attorneys' fees must resolve three basic issues—the market rate, the reasonable number of hours, and the adequacy of the documentation of those hours. Defendants, as is their routine practice in these cases, challenge plaintiffs' request on all three counts. Defendants' contentions are totally without merit and they bespeak a troubling refusal by defendants to take into account earlier decisions by federal district court judges sitting in the District of Columbia.

First of all, defendants assert that the appropriate partner rate should not exceed $100.00 for in court time and that the appropriate rate for out of court time should be $45.00 per hour. Defendants' recommended rate is not well taken. Defendants provide absolutely no authority for these two rates—neither caselaw nor reason is offered to justify these rates. The numbers are obviously simply plucked out of the air.

The appropriate rate is $115.00 per hour for partner time and $75.00 per hour for associates pursuant to my reasoning in *Lani Moore.*

■ Second, defendants challenge the reasonableness and productivity of the time spent by plaintiffs' counsel. Defendants argument on this score is also without basis. Defendants assert:

Plaintiffs' counsel has not met his burden of demonstrating any unique contribution that would justify an attorney's fees award to more than one attorney. *See Donnell v. United States,* 682 F.2d 240 (D.C.Cir.1982). Two separate counsel have entered appearances and four separate attorney's fees awards have been requested.

The defendants then proceed to claim that only the time spent by those attorneys who have entered appearances is eligible for compensation. They further claim that only one attorney should have been present in court and that the other attorney's time in court during the day long bench trial should be totally excluded from the compensable hours.

■ The claim that only one attorney should have handled this case is not really a decision that the defendants' counsel can or should make. Plaintiffs' counsel are experienced in both the field of litigation and the substantive law involved in cases brought under the EHA. I do not find that they overstaffed this litigation. I have observed plaintiffs' counsel in court, and it is clear that they are efficient both in their allocation of tasks and their execution of assignments. Simply because more than one attorney is involved in a given matter does not necessarily mean that more than one attorney undertook a given assignment. The method in which plaintiffs' counsel handled this case was in every respect appropriate. While a limit may be imposed on the number of attorneys who may participate in a litigation where it is anticipated that the defendant will underwrite the legal fees, it is up to the court, and not the opposing party, to determine whether the legal services were reasonable

and necessary. The natural result of such a rule no doubt would be a less efficient division of labor and a greater number of partner hours. I know of no requirement in making this determination to impose arbitrarily a "one-attorney rule" and I do not choose to do so in this case.

The second aspect of this complaint, the fact that two attorneys were present in the courtroom on the day this case was tried, and that only one attorney was needed, is also without merit. Both attorneys who were present on behalf of plaintiffs participated in the hearing and made significant contributions. Furthermore, I am deeply troubled by defendants' reliance on *Donnell v. United States*, 682 F.2d 240 (D.C. Cir.1982), for the proposition only a unique contribution would justify an attorney's fees award to more than one attorney. *Donnell* involved the question whether a private intervenor on the government's side in a lawsuit brought pursuant to 42 U.S.C. § 1973*l* (which provides attorneys' fees to the prevailing party) could obtain attorneys' fees when the government was already ably advocating its side of the controversy. This Circuit established the "unique contribution" standard for an award of fees to more than one law firm under those circumstances. *Donnell* is totally irrelevant to this case. It addresses situations where more than one law firm is involved on the same side of a case, and says nothing about the propriety of awarding fees to more than one attorney in a single firm. In fact, in *Donnell* the Circuit Court actually, (by sheer coincidence), found that under certain circumstances, "the duplication of hours between attorneys for certain work ... does not concern the Court ..." *Donnell* at 249. (There is, of course, no evidence of any duplication of effort by plaintiffs' counsel in this case.)

■ The second aspect of defendants' complaint about the reasonableness of the hours is that two attorneys seek compensation for the time they contributed to this case—one partner and one associate—even though they did not enter a formal appearance. The formal entry of an appearance is flatly irrelevant to the propriety of awarding an attorney fees for his or her time. Obviously, only two attorneys appeared in court—there was therefore no reason for everyone involved in this case to enter a formal appearance. Defendants' argument has a Catch–22 aspect to it. Had all four attorneys entered formal appearances in this case, I am sure defendants would complain that in so doing they had overstaffed the case.

Defendants also contest the adequacy of the documentation provided by plaintiffs' counsel. I find the documentation to be adequate to review the reasonableness of the hours.

For the above reasons, defendants' contentions about the rate, the reasonableness of the hours and the adequacy of the documentation of those hours are rejected. Plaintiffs' counsel seek an award of $8,855.30 for attorneys' fees and costs. Included in plaintiffs' counsel's request are 62.15 partner hours at $125.00 per hour. These hours will be compensated at $115.00 per hour. Reducing the total sought ($8,855.30) by $621.50 (62.15 × $10.00) produces a total award of $8,233.80. I find that such an award is appropriate in all respects.

One further point. Defendants emphasize that this case does not involve any "novel or difficult issues." Defendants' Brief at 8. They also note that plaintiffs' counsel have not made any "unique contribution" in this case. Defendant's Brief at 8. Relying on these unfounded assertions, defendants attack plaintiffs' counsel's staffing of this case. Furthermore, defendants emphasize throughout that plaintiffs' counsel are seeking to recover more in attorneys' fees than the amount of money at stake in the hearing held before me. Defendants cannot properly rely on such arguments to defeat plaintiffs' counsel's attorneys' fees requests. To permit such reliance would be tantamount to allowing defendants to bootstrap their own questionable judgment in refusing to negotiate with plaintiffs on the substantive issues into an attack on the propriety of plaintiffs' attorneys' fees request. If there is nothing novel or unique or complex about this case,

then why did defendants force plaintiffs to go to trial?

Moreover, although the ultimate decision to maintain Jonathan Holmes' placement at Chelsea was not a difficult one to make, plaintiffs' counsel did, in fact, make a unique contribution in this case. It clearly would have been harmful for Mr. Holmes to have been transferred in the middle of his senior year of high school. Plaintiffs' counsel's able efforts prevented this from happening—despite defendants' all out effort to bring about that transfer. Plaintiffs' counsel's able representation thereby made an important difference in the life of one youngster who is clearly striving to succeed against great odds. Their efforts are an example of the profession acting in its best tradition.

For all the foregoing reasons, and upon consideration of the administrative record in this case, Judge Green's Partial Summary Judgment Memorandum Opinion and Order, the testimony heard at trial, and this court's decision from the bench, it is hereby

ORDERED that defendants' request for relief from my October 29, 1987 judgment is denied, and it is further

ORDERED that defendants shall pay plaintiffs' counsel $8,233.80 in reasonable attorneys' fees and costs no later than fifteen days from the date of this Order, and it is further

ORDERED that plaintiffs' counsel shall reimburse plaintiffs for any payments made to counsel.