# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
                                       )
CHANTEL WARD,                          )
                                       )
                  Plaintiff,           )
                                       )
         v.                            )        Civil Action No. 13-CV-0098 (KBJ)
                                       )
DISTRICT OF COLUMBIA,                  )
                  Defendant.           )
                                       )
_____ )


## OPINION ADOPTING
## REPORT & RECOMMENDATION OF MAGISTRATE JUDGE

Plaintiff Chantel Ward ("Ward"), an adult student, brought this action appealing

a Hearing Officer's dismissal of her administrative claim under the Individuals with

Disabilities Education Act ("IDEA").  Ward's administrative claim challenged the

decision of the District of Columbia Public School System ("DCPS") to transfer Ward

from one private school (Monroe) to another (Kingsbury) on the ground that the transfer

did not comply with her individualized education program and was not the least

restrictive environment available for her education.  Accordingly, Ward alleges that she

was denied a free and appropriate public education, and seeks an order that both

reverses the administrative decision to transfer her and grants funding for her placement

at Monroe.

Ward first brought an administrative complaint regarding the transfer on August

20, 2012.  The Hearing Officer held an administrative hearing on October 26, 2012, and

issued a decision denying Ward's request on November 3, 2012.  On January 23, 2013,

Ward filed a complaint in this Court.  (ECF No. 1.)  This case was referred to a

1

Magistrate Judge for full case management on January 24, 2013 (ECF No. 3), and on March 5, 2013, Ward filed an amended complaint. (ECF No. 9.) On April 30, 2013, Ward filed a motion for summary judgment (ECF No. 13), and Defendant filed a cross-motion for summary judgment on May 28, 2013 (ECF No. 15).

On December 23, 2013, Magistrate Judge Deborah A. Robinson issued a Report and Recommendation (ECF No. 21, attached hereto as Appendix A) with respect to the parties' cross motions for summary judgment. The Report and Recommendation reflects Magistrate Judge Robinson's opinion that Ward's motion for summary judgment should be denied, and that Defendant's Motion for summary judgment should be granted. Report and Recommendation at 2. The Report and Recommendation also advised the parties that either party may file written objections to the Report and Recommendation, which must include the portions of the findings and recommendations to which each objection is made and the basis for each such objection. *Id.* at 17. The Report and Recommendation further advised the parties that failure to file timely objections may result in waiver of further review of the matters addressed in the Report and Recommendation. *Id.*

Under this court's local rules, any party who objects to a Report and Recommendation must file a written objection with the Clerk of the Court within 14 days of the party's receipt of the Report and Recommendation. LCvR 72.3(b). As of this date—over a month after the Report and Recommendation was issued—no objections have been filed.

The Court has reviewed Magistrate Judge Robinson's report and will **ADOPT** the Report and Recommendation in its entirety. Accordingly, the Court will **DENY**

Plaintiff's motion for summary judgment and **GRANT** Defendant's motion for summary

judgment.  A separate order consistent with this opinion will follow.

DATE:  January 24, 2014                    *Ketanji Brown Jackson*
                                           KETANJI BROWN JACKSON
                                           United States District Judge

# APPENDIX A

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

CHANTEL WARD,

    Plaintiff,

    v.

DISTRICT OF COLUMBIA,

    Defendant.

Civil Action No. 13-0098
KBJ/DAR

**REPORT AND RECOMMENDATION**

Plaintiff Chantel Ward commenced this action against the District of Columbia, pursuant to the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400, *et. seq.*, alleging that it failed to provide her with an appropriate educational placement, and seeking reversal of an administrative hearing officer determination that denied her request for relief. Amended Complaint for Declaratory Judgment & Inju[n]ctive and Other Relief ("Amended Complaint") (Document No. 9).[1] This action was referred to the undersigned United States Magistrate Judge for full case management, including a report and recommendation on dispositive motions. Referral to Magistrate Judge Order (Document No. 3). Pending for consideration by the undersigned are Plaintiff['s] Motion for Summary Judgment (Document No. 13) and Defendant's Cross-Motion for Summary Judgment (Document No. 15). Upon consideration of the parties' motions, the memoranda in support thereof and opposition thereto, the administrative record and

---

[1] Plaintiff originally filed her Complaint for Declaratory Judgment & Inju[n]ctive and Other Relief (Document No. 1) on January 23, 2013; however, at the initial scheduling conference, the undersigned ordered that she file an amended complaint to correct a typographical error in the request for relief, *see* Scheduling Order (Document No. 10).

the entire record herein, the undersigned will recommend that the court deny Plaintiff's motion

for summary judgment and grant Defendant's cross-motion for summary judgment.

**BACKGROUND**

Plaintiff Chantel Ward is an adult student, residing in the District of Columbia, who has

been identified as having a "specific learning disability" that requires special education services.

Amended Complaint ¶¶ 5-6, 8-9; Administrative Record (Document No. 12) at 45. Plaintiff's

individualized education program ("IEP") requires that she receive 26 hours per week of

specialized instruction, 30 minutes per week of behavioral support services, and one hour per

week of speech-language pathology services. *Id.* at 47. With respect to the least restrictive

environment ("LRE") provision, Plaintiff's IEP prescribes that she receive a full-time out of

general education setting to receive specialized instruction in the areas of reading, math, and

written expression.[2] *Id.* District of Columbia Public Schools ("DCPS") began funding

Plaintiff's attendance at Monroe School, a private full-time special education school, after the

parties executed a settlement agreement in December 2010 to resolve a previous administrative

complaint. *Id.* at 45. Prior to that, Plaintiff attended the Cesar Chavez Public Charter School for

both the 2009-2010 and 2010-2011 school years. *Id.* at 45, 57; Amended Complaint ¶ 8. At

Cesar Chavez, Plaintiff struggled with school and had to repeat ninth grade twice. *Id.* at 45.

---

[2] The hearing officer, and the parties, characterize the "setting" which Plaintiff requires, as established by the LRE provision of her IEP, as "full-time placement out of the general education [setting]." *See* Administrative Record at 47; *see also id.* at 43 n.2. The phrase "least restrictive environment" refers to the IDEA's requirement that "[t]o the maximum extent appropriate, children with disabilities, including children in public or private institutions or other care facilities, are educated with children who are not disabled, and special classes, separate schooling, or other removal of children with disabilities from the regular educational environment occurs only when the nature or severity of the disability of a child is such that education in regular classes with the use of supplementary aids and services cannot be achieved satisfactorily." 20 U.S.C. § 1412(a)(5)(A).

While attending Monroe, she "has made academic and emotional progress" and "is more focused and interested in school." *Id.* at 46.  In October 2012, the director of Monroe concluded that Plaintiff was "on the cusp" of 11th grade and 12th grade.  Hearing Transcript, Case No. 2012-0561 (Oct. 26. 2012) ("Tr.") (Document No. 11-1) at 156:1-5.

At an IEP meeting conducted in December 2011, DCPS proposed a transfer from Monroe to a special education program at a DCPS public school, Spectrum at Coolidge Senior High School, and issued a prior written notice for that transfer.  Administrative Record at 47, 121-22.  Plaintiff objected to this proposed transfer by filing a due process complaint.  *Id.* at 47.  The assigned hearing officer determined that DCPS could not transfer Plaintiff because it "failed to follow required procedures in making the change in placement . . . ."  *Id.* at 48, 327-334.

Thereafter, at an IEP meeting conducted in May 2012, DCPS proposed a transfer to High Road School, a private full-time special education school.  *Id.* at 48.  DCPS sought to move Plaintiff due to concerns regarding teacher certification and the implementation of Plaintiff's IEP at Monroe.  *Id.* at 80-81.  Plaintiff's counsel suggested Kingsbury School, another private special education school, opining that it may be more appropriate for Plaintiff.  *Id.* at 48, 82.  After Kingsbury accepted Plaintiff for attendance, DCPS issued a prior written notice proposing a change in location of services from Monroe to Kingsbury for the 2012-2013 school year.  *Id.* at 48, 84-86.  When Plaintiff visited Kingsbury, however, she determined that she did not like it. *Id.* at 48.  Plaintiff filed a due process complaint on August 20, 2012, challenging the proposed transfer to Kingsbury, and seeking an order requiring DCPS to continue funding her placement at, and transportation to, Monroe or another "11-month full-time out of general education program." *Id.* at 3-9.

A hearing officer conducted an administrative hearing on October 26, 2012, at which he considered "[w]hether DCPS' proposal to move the student from [Monroe] at the May 14, 2012 IEP team meeting and to Kingsbury pursuant to the August 8, 2012 prior written notice is a change in placement and/or a move to an inappropriate educational setting such that it results in a denial of a free and appropriate public education ('FAPE')." *Id.* at 42, 45.  The hearing officer heard testimony from Plaintiff; Plaintiff's mother; Dr. Carolyn Gravely-Moss, the director of Monroe's counseling services; Ruth Logan-Staton, the director of Monroe; Erika Johnson, a case manager in DCPS' Office of Special Education; and Candi CdeBaca and Jennifer Switlick, student progress monitors for DCPS.  Tr. at 3; Administrative Record at 57.

Following the hearing, in a written decision issued on November 3, 2012, the hearing officer dismissed Plaintiff's complaint with prejudice, concluding that Plaintiff "failed to meet her burden of proof that DCPS' change of [her] school from [Monroe] to Kingsbury is a change in placement or that Kingsbury is unable to implement [her] IEP or that it is a lesser restrictive environment or cannot meet [her] unique needs." Administrative Record at 53.  More specifically, the hearing officer found that "[t]here is no evidence in the record that [Plaintiff's] IEP or LRE was changed at the May 14, 2012, meeting" and that "[t]he evidence demonstrates that at Kingsbury the student can receive services in a full time out of general education setting, with small classes and individualized instruction and receive the prescribed related services." *Id.* at 52.  Plaintiff then commenced this action pursuant to the IDEA seeking reversal of the hearing officer's determination.

**CONTENTIONS OF THE PARTIES**

Plaintiff contends that Kingsbury is an inappropriate placement because "it offers a 10-

month program while [Plaintiff] requires 11 months to progress," and because relocation "would likely result in significant academic regression." Plaintiff['s] Memorandum of Points and Authorities in Support of Plaintiff['s] Motion for Summary Judgment ("Plaintiff's Memorandum") (Document No. 13) at 7. Plaintiff submits that she has made significant progress while at Monroe, after a period of "serious educational failure and regression" at Cesar Chavez, and that she is close to graduating. *Id.* at 8-9. Plaintiff relies on *Holmes v. District of Columbia*, 680 F. Supp. 40 (D.D.C. 1988), for the proposition that "movement of a student from one placement to another has been found inappropriate where the student had adjusted to the prior placement and had made educational progress." *Id.* at 7-8. Plaintiff thus contends that a transfer to Kingsbury is inappropriate because it is "likely to produce regression, delay her graduation, and undermine the educational progress that she has made . . . ." *Id.* at 12-13.

Defendant contends that "the hearing officer correctly decided that DCPS did not change the student's educational placement; rather, DCPS proposed to move the student from one private special education school to another private special education school that is able to implement the student's [IEP] in the setting prescribed by her IEP." Memorandum of Points and Authorities in Support of Defendant's Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defendant's Memorandum") (Document Nos. 14, 15) at 3. Defendant avers that Plaintiff's case "is premised on an inaccurate use [of] the term 'placement,'" *id.* at 16, and maintains that Kingsbury can fully implement Plaintiff's IEP and can offer services to aid in her transition, *id.* at 25-26, 28-29. Defendant notes its concerns regarding the certification of teachers at Monroe, *id.* at 22-23, its documentation of Plaintiff's course work and progress, *id.* at 24, and its implementation of Plaintiff's IEP, *id.* at 24-25. Defendant thus

contends that it sought to transfer her in order to "ensure that [she] received a FAPE at a school that was capable of implementing her IEP . . . ." *Id.* at 22.

In response, Plaintiff maintains that her situation is analogous to the student in *Holmes*, because she is close to graduating and would likely regress if transferred, and that the court should thus conclude that transferring her to Kingsbury would be inappropriate. Plaintiff['s] Memorandum of Points and Authorities in Opposition to the Defendant's Cross Motion for Summary Judgment and in Reply to the Defendant's Opposition to the Plaintiff's Motion for Summary Judgment ("Plaintiff's Opposition") (Document Nos. 17, 18) at 2-4. Plaintiff also contends that Defendant's concerns about Monroe are "incorrect" and "irrelevant in light of the progress" that Plaintiff has made while attending Monroe School. *Id.* at 4-8.

Defendant reiterates that "DCPS has not changed [Plaintiff's] educational placement, and the record evidence does not prove by a preponderance of evidence that there has been any denial of FAPE . . . ." Defendant's Reply to Plaintiff's Opposition to Defendant's Cross-Motion for Summary Judgment ("Defendant's Reply") (Document No. 20) at 6. Defendant submits that Plaintiff's reliance on *Holmes* is misplaced, and points to other decisions in support of its contention that courts distinguish between a change in educational placement and a change in location of services. *Id.* at 2-5. Finally, Defendant contends that even if the court "construe[d] Plaintiff's claim of harm related to the transition as a claim for failure to implement her IEP," there is not sufficient evidence in the record to support a finding that Plaintiff will be harmed by the transfer to Kingsbury. *Id.* at 5-6.

**APPLICABLE STANDARDS**

   ***Individuals with Disabilities Education Act***

One of the stated purposes of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living[.]"  20 U.S.C. § 1400(d)(1)(A).  In general, "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21 . . . ."  § 1412(a)(1)(A).  To ensure access to a free appropriate public education ("FAPE") for children with disabilities, "the child's parents, teachers, school officials, and other professionals collaborate in a 'multi-disciplinary team' to develop an individualized educational program [] to meet the child's unique needs."  *D.K. v. Dist. of Columbia*, No. 13-110, 2013 WL 5460281, at *1 (D.D.C. Oct. 2, 2013) (citing 20 U.S.C. § 1414(d)(1)(B)); *see Reid ex rel. Reid v. Dist. of Columbia*, 401 F.3d 516, 519 (D.C. Cir. 2005).  The IEP is a written statement of the student's educational goals and required services, § 1414(d)(1)(A), that "must, at a minimum, 'provid[e] personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction,'" *Reid*, 401 F.3d at 519 (citing *Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cnty. v. Rowley*, 458 U.S. 176, 203 (1982)).

A parent, or adult student, may file an administrative complaint and have an opportunity for an impartial due process hearing if he or she objects to "the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child."  20 U.S.C. § 1415(b)(6), (f)(1).  A party to the administrative proceeding may challenge the decision "in any State court of competent jurisdiction or in a district court of the United States . . . ."  § 1415(i)(2)(A).  The reviewing court "shall receive the records of the

administrative proceedings," "shall hear additional evidence at the request of a party," and "basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." § 1415(i)(2)(C).

The party challenging the administrative determination bears the burden "of persuading the court that the hearing officer was wrong." *Reid*, 401 F.3d at 521 (citation omitted) (internal quotation marks omitted). On review, IDEA administrative proceedings are given "less deference than is conventional in administrative proceedings," since the court may hear additional evidence outside of the administrative record. *Id.* (citations omitted) (internal quotation marks omitted). "While the court must make an independent determination, the court also should give 'due weight' to the decision of the hearing officer and should afford some deference to the expertise of the hearing officer and the school officials." *D.K.*, 2013 WL 5460281, at *4 (citing *Rowley*, 458 U.S. at 206; *Lyons v. Smith*, 829 F. Supp. 414, 419 (D.D.C. 1993)). "[A] hearing decision without reasoned and specific findings deserves little deference," but a "court upsetting the [administrative] officer's decision must at least explain its basis for doing so." *Reid*, 401 F.3d at 521 (citations omitted) (internal quotation marks omitted).

### *Summary Judgment*

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Whether a fact is material is determined based on whether it might affect the outcome of the suit under the governing law. *Id.*

The party seeking summary judgment must identify "those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248, 256 (internal quotation marks omitted). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Id.* at 252. The court will view the evidence and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"If neither party introduces new evidence in a civil suit seeking review of a hearing officer's determination, 'a motion for summary judgment operates as a motion for judgment based on the evidence comprising the record.'"[3] *Banks ex rel. D.B. v. Dist. of Columbia*, 720 F. Supp. 2d 83, 88 (D.D.C. 2010) (quoting *Thomas v. Dist. of Columbia*, 407 F. Supp. 2d 102, 109 (D.D.C. 2005)); *see also Presely v. Friendship Pub. Charter Sch.*, No. 12-0131, 2013 WL 589181, at *4 (D.D.C. Feb. 7, 2013).

**DISCUSSION**

The sole issue before the court is whether Defendant failed to provide Plaintiff with an appropriate placement, and thus denied her a FAPE, by proposing a transfer from Monroe to

---

[3] *See infra* note 6.

Kingsbury.  *See* Plaintiff's Memorandum at 7; Amended Complaint at 4-5.  Plaintiff avers that

placement at Kingsbury is inappropriate because (1) "Kingsbury does not offer the 11 month

program that [she] has been receiving at [Monroe] . . ." and (2) "it would remove [her] from a

placement in which [she] is making educational progress and disrupt [her] education when [she]

is on track to graduate in just over a year."  Amended Complaint ¶¶ 18-19; *see* Plaintiff's

Memorandum at 7.

Although the term "educational placement" is not expressly defined by the IDEA, this

court has interpreted it to mean "something between the physical school attended by a child and

the abstract goals of a child's IEP."  *D.K.*, 2013 WL 5460281, at *5 (internal quotation marks

omitted) (citing *Laster v. Dist. of Columbia*, 394 F. Supp. 2d 60, 64–65 (D.D.C. 2005)); *see*

*Bowling v. Dist. of Columbia*, No. 11-2145, 2013 WL 5214948, at *4 (D.D.C. Sept. 16, 2013);

*Johnson v. Dist. of Columbia*, 839 F. Supp. 2d 173, 177 (D.D.C. 2012).  Thus, "a change of

location alone does not constitute a change in 'educational placement' under the IDEA."  *D.K.*,

2013 WL 5460281, at *5.  In the context of the statute's stay-put provision, the Court of Appeals

"has explained that if a parent cannot identify a 'fundamental change in, or elimination of[,] a

basic element of the education program,' there has been no change in 'educational placement.'"

*Id.* (footnote omitted) (quoting *Lunceford v. Dist. of Columbia Bd. of Educ.*, 745 F.2d 1577, 1582

(D.C. Cir. 1984)); *see Johnson*, 839 F. Supp. 2d at 177.

Plaintiff has not demonstrated that the hearing officer erred in concluding that the

proposed transfer to Kingsbury is not a change in placement, and is, instead, a change in location

of services.  Although Kingsbury offers a 10-month program, in contrast to the 11-month

program offered by Monroe, the undersigned finds that Plaintiff has failed to show that this

distinction is a "fundamental change in" or an "elimination of a basic element of [her] education program." As noted by the hearing officer, Administrative Record at 52, Plaintiff's IEP does not require an 11-month program. Candi CdeBaca, a student progress monitor for DCPS' nonpublic unit, Tr. at 240:9-10, testified that Plaintiff's IEP "does not require her to be in school for 11 months," Tr. at 264:4-5. Erika Johnson, the acting project coordinator and compliance case manager for DCPS' Office of Special Education, Tr. at 204:19-205:1, explained that during Plaintiff's May 2012 IEP meeting, "[t]he teacher basically said that she would benefit from [an 11-month program], but no one confirmed whether or not it was actually necessary," Tr. at 218:19-21; *see also* Tr. at 216:1-6. Ms. Johnson clarified that Monroe was not selected because Plaintiff required an 11-month program, Tr. at 219:2-5, but rather, she participates in an 11-month program because that is the curriculum that the school offers, Tr. at 215:14-17.

Moreover, if it is determined, in accordance with the IDEA, that Plaintiff requires services for a period beyond the duration of the 10-month program, there is evidence in the record that Kingsbury can offer extended school year services. Ms. Johnson testified that if Plaintiff's IEP team determined that it was necessary, Kingsbury could provide extended school year services. Tr. at 219:17-21. Jennifer Switlick, a DCPS student progress monitor who currently monitors students at Kingsbury, Tr. at 289:18-21 291:1-2, similarly testified that Kingsbury could provide these services to Plaintiff if deemed necessary, and explained the process for making that determination, Tr. at 303:5-304:1.

Plaintiff does not dispute that Kingsbury can implement the provisions of her IEP.[4] Nor

---

[4] In contrast, there are concerns regarding Monroe's ability to implement Plaintiff's IEP. Plaintiff initially testified that she is not receiving speech services at Monroe, Tr. at 81:18-22, but subsequently testified that she is receiving speech services during her classes, Tr. at 194:13-15. Ms. CdeBaca, whose duties include monitoring students in nonpublic schools to ensure that they are progressing and that the school is in compliance with applicable

does she challenge the appropriateness of her IEP.  *See* Plaintiff's Memorandum at 7.  The

hearing officer found that Kingsbury can offer services in a full-time out of general education

setting with small classes and individualized instruction.  Administrative Record at 52.  He

further found that Kingsbury can provide the services required by Plaintiff's IEP, including

behavioral support services and speech language services.[5]  *Id.*  These findings are supported by

the record.  Ms. CdeBaca testified that "Kingsbury can implement the IEP as it stands."  Tr. at

265:7-8.  Ms. Switlick corroborated that Kingsbury can provide the services required by

Plaintiff's IEP.  Tr. at 300:3-9, 301:3-7.  Plaintiff has offered no evidence to the contrary.

In *D.K. v. District of Columbia*, the court found that the change in location of services did

not constitute a change in education placement where DCPS sought to transfer a student to

Kingsbury.  2013 WL 5460281, at *5-6.  The court determined that there was no "fundamental

change in, or elimination of, any basic element of [the student's] educational program as set forth

in his IEP" and that Kingsbury could implement his IEP.  *Id.* at *6-7.  Other courts have similarly

concluded.  *See Jalloh v. Dist. of Columbia*, No. 12-0694, 2013 WL 5188430, at *8 (D.D.C.

Sept. 17, 2013) (adopting a report and recommendation that the hearing officer's determination

that the student's placement was appropriate be upheld, where the court found that the proposed

---

regulations, Tr. at 241:6-10, testified regarding problems tracking Plaintiff's progress at Monroe, Tr. at 249:8-11, 18-22, as well as difficulty verifying the implementation of her required services, Tr. at 260:10-21, 265:22-266:3. Ms. Johnson testified that DCPS was considering a new school because there were concerns that Monroe could not provide Plaintiff a FAPE.  Tr. at 211:1-3, 226:5-11.

[5] The hearing officer explained that he was "not convinced by the argument that th[e] difference in the length of the school year makes Kingsbury [] a less restrictive setting than [Monroe]."  Administrative Record at 52. At the administrative level, Plaintiff averred that the 10-month program at Kingsbury is "a less restrictive educational placement."  *See id.* at 44.  Plaintiff has not raised that argument in its submissions to this court.  *See generally* Plaintiff's Memorandum; Plaintiff's Opposition.  In any event, the undersigned finds that the hearing officer's conclusion that Kingsbury offers a full-time out of general education setting, as required by the LRE provision of Plaintiff's IEP, is supported by the record.  *See* Administrative Record at 47, 52.

school could implement his IEP); *Aikens v. Dist. of Columbia*, No. 12-553, 2013 WL 3119303, at *6 (D.D.C. June 21, 2013) (noting that "[i]n the absence of a 'fundamental change in' or 'elimination of' a basic element of [the student's] educational program" when she was moved to a different school, there had been "no change in educational placement" and the student was not denied a FAPE); *James v. Dist. of Columbia*, No. 12-376, 2013 WL 2650091, at *4 (D.D.C. June 9, 2013) (citations omitted) (concluding that DCPS did not deny the student a FAPE after finding that the school "was an appropriate location of services" for the student and noting that "[u]nder the IDEA, an appropriate location of services is one which can implement a student's IEP and meet his specialized educational and behavioral needs"); *Garmany v. Dist. of Columbia*, 935 F. Supp. 2d 177, 183 (D.D.C. 2013) (upholding the hearing officer's finding that the school "was an appropriate placement because [it] could implement [the student's] IEP").  As discussed above, Kingsbury can fully implement Plaintiff's IEP with no fundamental change in or elimination of its provisions.

With respect to Plaintiff's contention that "[b]y choosing to place her in a program in which the evidence was overwhelmingly that she would experience educational regression, the Defendant has failed to place [her] in an appropriate program," *see* Plaintiff's Memorandum at 8, the undersigned finds that Plaintiff points to no evidence in the record which supports the contention.  Plaintiff relies on her own testimony, the testimony of her mother, and the testimony of Dr. Carolyn Gravely-Moss.  *See id.* at 8-9.  While the court does not minimize their concerns, in light of the other evidence in the record, their testimony does not warrant a finding that the hearing officer erred in concluding that Kingsbury "is an appropriate location of services for [Plaintiff]."  *See* Administrative Record at 53.

Plaintiff and her mother both expressed their concern that Plaintiff would be unhappy and would regress if transferred to Kingsbury.  Plaintiff testified that after she visited Kingsbury, the people did not seem "friendly" or "genuine" and she did not feel comfortable there.  Tr. at 73:1-3, 5-10, 19-21.  When asked if she thought she could do well at Kingsbury, she responded "[p]robably not, I'd probably go to a depression because I'm used to Monroe.  I don't think that's a school that's fit for me."  Tr. at 75:16-20.  Plaintiff's mother testified that when they visited Kingsbury, the students appeared "wild" and "disobedient" and the staff did not seem "genuine." Tr. at 56:5-8, 20-21.  She noted that Plaintiff has improved and shown more interest in school after transferring to Monroe, Tr. at 51:8-19, and worried that she would regress if transferred, Tr. at 58:1-8.  Dr. Carolyn Gravely-Moss, who provided counseling services to Plaintiff when she first began attending Monroe, and now supervises her counselor, was designated by the hearing officer as an expert in the area of psychological counseling.  Tr. at 92:13-14, 108:22-109:2, 109:10-13, 111:1-11.  Dr. Gravely-Moss indicated that Plaintiff has progressed while at Monroe, has an increased trust in the educational system, and is now focusing on her future.  Tr. at 114:4-15.  Dr. Gravely-Moss opined that if she were transferred to Kingsbury, Plaintiff would go through an adjustment period that could hinder her psychological development and cause a setback in her academic progress.  Tr. at 119:10-18.  However, she did acknowledge that with appropriate support, Plaintiff could overcome this transition period, as she did after she transferred to Monroe.  Tr. at 126:4-11.

The record indicates that Plaintiff can receive services to mitigate negative effects of the transfer.  Ms. CdeBaca indicated that a DCPS transition case manager is available to facilitate Plaintiff's transfer to Kingsbury.  Tr. at 273:8-14.  Ms. Switlick described Kingsbury's services,

explaining that Plaintiff could be assigned a teacher advisor to assist in her transition, Tr. at

305:13-20, offered tutoring, Tr. at 305:21-306:2, and have access to clinical psychologists to

manage the emotional aspect of transitioning, Tr. at 306:5-13.

Plaintiff relies solely on *Holmes v. District of Columbia*, 680 F. Supp. 40 (D.D.C. 1988)

in support of her position that "in this jurisdiction, case law supports a strong preference for not

changing educational placements of special education students who have adjusted well to their

current placement and who are close to graduating." Plaintiff's Memorandum at 10; *see*

Plaintiff's Opposition at 3-4. Although Plaintiff argues that her case is analogous to *Holmes*, the

undersigned finds that *Holmes* is significantly distinguishable, and cannot be regarded as

controlling in the context of this action. The court in *Holmes* observed that the proposed school

was "in a start-up posture" and questioned whether it "could have come even close to meeting

the needs of the plaintiff." 680 F. Supp. at 42. In contrast, Kingsbury is an established school

that can provide the services required by Plaintiff's IEP "in a full time out of general education

setting, with small classes and individualized instruction . . . ." Administrative Record at 52; *see*

*also id.* at 84. Although Plaintiff posits that the *Holmes* court's "misgivings" about the school

were not the main "premise[]" for the holding, *see* Plaintiff's Opposition at 4, the court stated

that ordering the student to attend the proposed school "would have been a reckless and wanton

act," 680 F. Supp. at 42. Additionally, in *Holmes*, the court made no findings with respect to

concerns regarding the student's preferred school. *Cf. supra* note 4.

*Holmes* was also in a different procedural posture than this action, since in *Holmes*, the

court conducted a bench trial and made findings "based on testimony [it] heard firsthand." *Id.* at

41-42. Here, Plaintiff bears the burden of demonstrating that the hearing officer erred, and this

court must review the entire record, giving some deference to the reasoned findings by the hearing officer.  *See Reid*, 401 F.3d at 521.

In any event, *Holmes* was decided more than twenty years ago under the precursor statute to the IDEA.  As discussed above, more recent case law from this court, decided in accordance with the IDEA, directs that the court determine whether there has been a fundamental change in, or elimination of, a basic element of the student's educational program, as established by his or her IEP.

The hearing officer determined that "the decision to place [Plaintiff] at Kingsbury was a location of services decision . . . and not a change of placement decision."  Administrative Record at 52.  He further found that "Kingsbury can implement [Plaintiff's] IEP and is an appropriate location of services for [her]."  *Id.* at 53.  He thus concluded that "DCPS did not violate the IDEA and [its] actions did not deny [Plaintiff] a FAPE."  *Id.* at 52.  The undersigned finds that the hearing officer's determination is supported by a preponderance of evidence in the record, and that Plaintiff has failed to meet her burden of demonstrating that the hearing officer erred in his decision.[6]

**CONCLUSION**

For all of the foregoing reasons, it is this 23rd day of December, 2013,

**RECOMMENDED** that Plaintiff['s] Motion for Summary Judgment (Document No. 13)

---

[6] Defendant submitted additional evidence for the court's consideration in the form of a hearing officer determination rendered on June 5, 2013.  *See* Defendant's Reply, Exhibit 1 (Document No. 20-1).  Defendant represents that "[d]uring the pendency of this appeal, Plaintiff filed a second due process complaint alleging that DCPS was failing to provide the student a FAPE by not transporting her to the Monroe School."  Defendant's Reply at 2.  Defendant further represents that the hearing officer denied Plaintiff's request for relief, and that the decision has not been appealed.  *Id.*  The undersigned has not considered this additional evidence, as it was not necessary for the resolution of the issues before the court.

be **DENIED**; and it is

       **FURTHER RECOMMENDED** that Defendant's Cross-Motion for Summary Judgment

(Document No. 15) be **GRANTED**.

                                                          /s/

                                         DEBORAH A. ROBINSON
                                         United States Magistrate Judge

       **Within fourteen days, either party may file written objections to this report and recommendation.  The objections shall specifically identify the portions of the findings and recommendations to which objection is made and the basis of each such objection.  In the absence of timely objections, further review of issues addressed herein may be deemed waived.**